UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DRUYAN-SAGAN
ASSOCIATES, INC.,

    Plaintiff,

v.

SAGANWORKS INC.,

    Defendant.
_____/

Case No. 22-10810

Honorable Sean F. Cox
United States District Court Judge

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS**

    This is a trademark infringement and dilution case. Plaintiff, Druyan-Sagan Associates, Inc. ("Druyan-Sagan"), alleges that Defendant, Saganworks Inc. ("SWI"), through its repeated use of the word SAGAN, and repeated attempts to associate with the famous scientist Carl Sagan, has infringed on and diluted two trademarks Druyan-Sagan owns. This case is before the Court on SWI's Motion to Dismiss Druyan-Sagan's trademark dilution claim. The Court conducted a hearing on this Motion on January 12, 2023.

    For the reasons set forth below, the Court **DENIES** SWI's Motion. Druyan-Sagan has plead sufficient facts to make a plausible claim that its trademarks are sufficiently famous to sustain a trademark dilution claim.

1

# BACKGROUND

## A. Procedural Background

Plaintiff filed a complaint against Defendant on April 15, 2022. (ECF No. 1). On June 28, 2022, Defendant filed a "Motion to dismiss Counts Two and Three of Plaintiff Druyan-Sagan Associates, Inc.'s Complaint." (ECF No. 11).

Rather than rule on Defendant's Motion, this Court entered an Order, on August 10, 2022, granting Plaintiff leave to amend its Complaint. (ECF No. 13).

On August 30, 2022, Plaintiff filed a First Amended Complaint, which is the operative Complaint in this matter. (Compl., ECF No. 14).

Plaintiff's Complaint contains three counts: (1) "Trademark Infringement" in violation of 15 U.S.C. § 1125(a)(1)(A); (2) "Trademark Dilution" in violation of 15 U.S.C. § 1125(c); and (3) Violation of Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.900 et seq. (Compl. at 22, 25, 28).

Plaintiff's "Trademark Dilution" claim, the only relevant claim for this Motion, alleges that SWI's unauthorized use of Druyan-Sagan's trademarks, "CARL SAGAN" and "SAGAN," has caused consumer confusion and continues to harm Druyan-Sagan by diluting the value of its trademarks. (Compl. ¶¶ 72-85).

On September 27, 2022, Defendant filed a "Motion to Dismiss Count Two of Plaintiff Druyan-Sagan Associates Inc.'s First Amended Complaint," which is the Motion currently before this Court. (Def.'s Mot., ECF No. 18).

## B. Factual Background

Druyan-Sagan is a company aimed at preserving and protecting the legacy of Dr. Carl Sagan. (Pl.'s Resp. 1, ECF no. 21). Dr. Sagan is a famous astronomer, cosmologist, and

2

astrophysicist. He is best known for his book, COSMOS, and the accompanying television series, COSMOS, which won three Primetime Emmy awards in 1981. (Compl. ¶ 11, ECF No. 14).

Since June 1977, Druyan-Sagan has marketed, promoted, and sold products and services related to Dr. Sagan under the CARL SAGAN mark and the SAGAN mark ("SAGAN marks"). (Compl. ¶ 20). Druyan-Sagan promotes and sells Dr. Sagan's expansive collection of works and also licenses the SAGAN marks to attach to goods and services that align with Carl Sagan's legacy and brand. (Compl. ¶ 19).

Druyan-Sagan formalized its right to the "CARL SAGAN" mark on October 22, 2019. (Compl. ¶ 30); U.S. Trademark Registration No. 5891655. Druyan-Sagan is still in the process of formalizing its rights to the mark "SAGAN." (Compl. ¶ 32); U.S. Trademark Application No. 90056789.

Defendant, SWI, is a software company that creates interactive virtual spaces or rooms. (Compl. ¶ 6). Druyan-Sagan has never given SWI permission to use any of its SAGAN marks, or Carl Sagan's name, image, or likeness. (Compl. ¶ 41).

Nonetheless, on October 11, 2019, SWI filed a trademark application seeking to register the mark "SAGANWORKS." (Compl. ¶ 42); U.S Trademark Application No. 88651722. Druyan-Sagan has timely and continuously opposed SWI's application for registration of the "SAGANWORKS" mark. (Compl. ¶ 44, 49).

Despite Druyan-Sagan's opposition, SWI continues using "SAGANWORKS" and the SAGAN marks in connection with its business. (Compl. ¶ 49). For example, SWI's logo includes the word "SAGAN" and the company's only good or service that it markets to consumer is called a "Sagan." (Compl. ¶ 39, 52).

SWI claims that SAGAN is an acronym that stands for "**S**patially **A**ccessible, **G**allery of **A**rchived k**N**owledge." (Compl. ¶ 59). Druyan-Sagan alleges that SWI's acronym is a rouse because SWI has consistently marketed its product as sponsored by Carl Sagan. (Compl. ¶ 60-69).

For example, SWI's website, at one time, included a page giving subscribers a chance to "win the Carl Sagan book of your choice." (Compl. ¶ 62; Ex. 5). SWI has also posted pictures of Carl Sagan on its Facebook with the words "Saganworks" and "Sagan." (Compl. ¶ 66; Ex. 9). SWI's CEO further stated that the company's software, "SAGAN," pays tribute to Carl Sagan. (Compl. ¶ 62; Ex. 6).

SWI's continued alleged use of the SAGAN marks in connection with its business is the reason for this suit. SWI now moves to dismiss Count Two — trademark dilution — of Druyan-Sagan's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**STANDARD OF DECISION**

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, Druyan-Sagan attached nine exhibits to its First Amended Complaint. (Compl., ECF No. 14). The Court may consider those documents when analyzing SWI's Motion to Dismiss.

**ANALYSIS**

The Court holds that Druyan-Sagan has plead sufficient facts to make a plausible claim of trademark dilution.

Trademark dilution is governed by The Lanham Act. The Act entitles "the owner of a famous mark that is distinctive" to an injunction against someone who "commences use of a mark ... in commerce that is likely to cause dilution ... of the famous mark" any time after the owner's mark has become famous. § 1125(c)(1).

To succeed on a trademark dilution claim, a plaintiff must show the senior mark is (1) famous; and (2) distinctive. Use of the junior mark must (3) be in commerce; (4) have begun subsequent to the senior mark becoming famous; and (5) cause dilution of the distinctive quality of the senior mark. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004).

SWI's Motion focuses exclusively on element one. SWI argues that Druyan-Sagan's SAGAN marks cannot be diluted because they are not famous. (*See* Def.'s Mot. 1, ECF No. 18).

Therefore, the only question the Court must answer is whether Druyan-Sagan has plead sufficient facts to make a plausible claim the SAGAN marks are famous.

A mark is considered famous when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In other words, to be considered famous, a mark must be considered a "household name." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).

The Lanham Act lists four factors a court may consider when determining whether a mark is sufficiently recognizable to be famous. *Id*. Courts may consider:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125. A court may also consider factors beyond the four above. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003).[1]

Examples of marks courts have found sufficiently famous are Nike, Pepsi, Nissan, Audi, Hershey's, and Victoria's Secret—brands with "a strong national presence," a "significant international presence," and "market dominance." *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 841 (E.D. Mich. 2015), *aff'd*, 672 F. App'x 575 (6th Cir. 2017)

---

[1] Druyan-Sagan can adequately plead fame without satisfying all four elements above. The only question a court must answer with respect to fame is whether a plaintiff has plead sufficient facts to plausibly show that a mark is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The four factors the Act lists are guideposts a court *may* consider when determining if a mark is sufficiently well-known to be famous. *See Id*.

6

(quoting *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F.Supp.2d 671, 698–699 (W.D.Ky.2010)).

SWI argues this Court should follow the example of other district courts in the Sixth Circuit that routinely dismiss trademark dilution claims at the motion to dismiss stage for failure to plead fame. (Def.'s Mot. 7). SWI cites three cases from the Sixth Circuit in support of its argument. Druyan-Sagan's claim is distinguishable because of the potential scale of the facts plead.

In *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735 (E.D. Mich. 2014), the first case cited by SWI, a company that made custom equipment for hockey goalies sued a rival manufacturer for trade dress infringement.[2] *Id*. at 740. The rival manufacturer argued the company's claim should be dismissed because its trade dress was not famous. *Id*. at 744.

In its complaint, the company alleged that it had developed a "famous brand identity, reputation, and sales distribution of its products internationally, including in the United States, Canada, South America, Europe and Asia, among other places." *Id*. at 749. Nonetheless, the court held that the company's allegations were "not sufficient to establish that the plaintiff's trade dress is famous beyond a niche sports market" and granted the rival manufacturer's motion to dismiss. *Id*.

The Court's ruling in *Piku* was logical. It is highly doubtful, if not impossible, that a company making equipment for hockey goalies, not even hockey players in general, could ever achieve sufficient fame to be a household name.

---

[2] Trade dress infringement is a distinct claim from trademark infringement. However, trade dress infringement also requires proof of fame, so the court's analysis is applicable.

Similarly, in the two other cases cited by SWI, could not plausibly make a case for fame. *See SDC Fin., LLC v. Bremer*, No. 3:19-CV-00525, 2019 WL 4393543, at *3 (M.D. Tenn. Sept. 13, 2019) (holding plaintiff plead insufficient facts to plausibly show its mark was famous within Tennessee where the only allegations were that plaintiff "has successfully operated a store in Nashville for three years and engaged in extensive advertising and promotion efforts, the audience for which is not disclosed."); *See also*, *Jonas on Front St., Inc. v. Ferndale on Rocks Enterprises, LLC*, No. 17-13223, 2017 WL 11319707, at *2 (E.D. Mich. Dec. 1, 2017) (holding allegations that regional and national media outlets (including *Men's Journal*) have reported on plaintiffs mark; that tourism professionals from Canada came to see the mark; and allegations that defendant and a local planning commissioner have openly discussed how well known the mark is were insufficient evidence to make a plausible case of fame).

The SAGAN marks have reached a far greater population than the marks in *Piku*, *Bremmer*, or *Jonas*. Since 1977, the SAGAN marks have appeared all over the world:

- The SAGAN marks were used to dedicate the Search for Extraterrestrial Intelligence Institute, the Carl Sagan Institute at Cornell University, and a small asteroid to Dr. Carl Sagan. (Compl. ¶ 26)

- The Amazon.com bestselling book (as of March 2022) "The Demon-Haunted World," which was authored by Carl Sagan, prominently displays the SAGAN marks. (Compl. ¶ 19).

- Dr. Sagan's book COSMOS bears the SAGAN marks and is one of the best-selling science books of all time. (Compl. ¶ 25).

- In 1980, Dr. Sagan's book, COSMOS, was spun into a TV series watched by over 500 million people in 60 countries. (Compl. ¶ 20). The SAGAN marks were heavily used in promotion of the show and to link the series to Dr. Sagan. (Compl. ¶ 23).

- In 2014, FOX aired a follow up series to COSMOS, called COSMOS: A Spacetime Odyssey. (Compl. ¶ 21). The series was aired as a global simulcast, and again used the SAGAN marks to promote and link the show to Dr. Sagan. *Id*.

- In 2020, National Geographic produced yet another COSMOS series called COSMOS: Possible Worlds. (Compl. ¶ 22). The mark CARL SAGAN was repeatedly used to within the show and to promote the show. *Id*. COSMOS: Possible Worlds also aired on Fox. *Id*.

- In September 2020, Jeep produced a commercial that displayed the SAGAN marks. (Compl. ¶ 27). The commercial launched globally and remains on the company's social media pages, such as Facebook. *Id*.

- The term SAGAN is defined in relation to Carl Sagan. (Compl. ¶ 28).

- Media outlets around the country, such as the Los Angeles Times and Smithsonian Magazine, have published articles displaying the SAGAN marks from at least 1985 through 2017. (Compl. ¶ 14).

Further, the SAGAN marks have reached more people than other marks that survived a motion to dismiss. *See, e.g., Impulsaria, LLC v. United Distribution Grp., LLC*, No. 1:11-CV-1220, 2012 WL 5178147, at *7 (W.D. Mich. Oct. 18, 2012) (finding sufficient allegations of fame to survive a motion to dismiss a trademark dilution claim where dietary supplement company alleged it was sole source of the dietary supplement sold under its brand name, that its trademark and trade dress have been in use since 2007, that it was one of the fastest growing dietary supplement providers in the United States in 2009, and that between 2007 and 2010, it sold in excess of 2 million packages of its branded herbal supplement, which accounted for an estimated 80% of the market share).

Finally, the Court will briefly address SWI's remaining arguments. SWI argues that Druyan-Sagan's factual allegations relate to the fame of Carl Sagan the person, and not the SAGAN marks. (Def.'s Mot. 16, ECF No. 18). SWI also argues Druyan-Sagan failed to allege sufficient facts to satisfy each element of the Lanham Act. (*See* Def.'s Mot. 8, 12, 15).

SWI's argument concerning the fame of Carl Sagan the person is better suited for summary judgment. At this stage, it is sufficient that Druyan-Sagan plead that its SAGAN marks, not Dr. Sagan, are famous. This Court need not yet concern itself with Druyan-Sagan's

likelihood of success on the merits. *See Impulsaria,* No. 11-cv-1220, 2012 WL 5178147, at *7 (though the court had "grave doubts" about whether the plaintiff's brand would prove famous enough, "the [c]ourt is not concerned with [p]laintiff's likelihood of success" on a motion to dismiss).

Also, as discussed above, the fame factors listed in the Lanham Act are non-exhaustive. They are mere suggestions for a court to consider when determining if a mark is sufficiently famous. Druyan-Sagan can make a plausible case of fame without satisfying all the factors listed in the Lanham Act.

In sum, Druyan-Sagan has adequately alleged fame, and is not yet required to prove the substance of its allegations.

## CONCLUSION

For the reasons stated above, **IT IS SO ORDERED** that Defendant's Motion is **DENIED**. Druyan-Sagan has plead sufficient facts to make a plausible claim the SAGAN marks are sufficiently famous to sustain a claim of trademark dilution.

**IT IS SO ORDERED.**

        s/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: January 25, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 25, 2023, by electronic and/or ordinary mail.

        s/Jennifer McCoy
        Case Manager